Kevin L. Hernandez, Esq.
Nevada Bar No. 12594
**LAW OFFICE OF KEVIN L. HERNANDEZ**
8920 W. Tropicana Avenue, Suite 101
Las Vegas, Nevada 89147
T: (702) 563-4450
F: (702) 552-0408
kevin@kevinhernandezlaw.com

Michael Kind, Esq.
Nevada Bar No. 13903
**KIND LAW**
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
(702) 337-2322
(702) 329-5881 (fax)
mk@kindlaw.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AUNDREA MACKLIN and KYLE REED, on behalf of themselves and others similarly situated,<br><br>Plaintiffs;<br><br>v.<br><br>SOUTHERN CAPITAL FINANCE GROUP, LLC, a foreign limited-liability company; THE DEAN LEGAL GROUP LTD., a domestic corporation;<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, ET SEQ.**<br><br>**JURY DEMAND** |

Plaintiffs Aundrea Macklin and Kyle Reed ("Plaintiffs"), by and through the undersigned counsel of record, and for their claims for relief against Defendants, Southern Capital Finance Group, LLC ("Southern Capital") and The Dean Legal Group Ltd. ("Dean Legal"), complain and allege as follows:

**INTRODUCTION**

1. Defendants are debt collectors who draft, file, or cause to be filed false proofs of personal service and false affidavits of due diligence in debt collection lawsuits against consumers like Plaintiffs. In so doing, Defendants violated the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. §§ 1692, *et. seq.*, which was enacted to combat these types of unfair and deceptive practices. The legislative history of the FDCPA clarifies such, commenting that it was passed in part to protect consumers like Plaintiffs from the unfair and deceptive debt collection abuses such as "simulating legal process" and using "bogus legal documents." *See Freeman v. ABC Legal Services, Inc.*, 827 F.Supp.2d 1065, 1074 (N.D. Cal. 2011).

2. In this case, Plaintiffs do not seek to challenge or overturn, in any way, any State Court action or judgment or any order from any judge in State Court.

**JURISDICTION AND VENUE**

3. This action arises out of Defendants' multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

4. This court has jurisdiction over this matter under 15 U.S.C. § 1692k and 28 U.S.C. § 1331. Declaratory relief is available under 28 U.S.C §§ 2201, 2202.

5. Under 28 U.S.C. § 1391(b), venue in this District is proper because, at all relevant times, Plaintiffs and Defendants resided and/or conducted business in the District of Nevada.

6. Venue is also proper in this District because the acts and transactions that give rise to this action occurred, in substantial part, in the District of Nevada.

7. Venue is also proper in this judicial district under 15 U.S.C § 1692k(d) in that Defendants transact business in this judicial district and the violations of the FDCPA complained of occurred in this judicial district.

**PARTIES**

8. Plaintiffs are adult individuals who reside in the State of Nevada.

9. Plaintiffs are natural persons allegedly obligated to pay a "debt," and are therefore "consumers" under 15 U.S.C. § 1692a(3).

10. Southern Capital is a foreign limited-liability company doing business in the State of Nevada.

11. Southern Capital regularly collects or attempts to collect consumer debts owed or due another, or asserted to be owed or due another, and therefore, Southern Capital is a "debt collector" under 15 U.S.C. § 1692a(6).

12. Southern Capital's principal purpose is to purchase, service, and collect defaulted consumer debts, and therefore, Southern Capital is a "debt collector" under 15 U.S.C. § 1692a(6).

13. Southern Capital's website (www.scfgllc.com) further demonstrates its status as a "debt collector" under the FDCPA.

14. The website refers to Southern Capital as a "debt buyer" specializing in "purchasing, selling & management of charged off receivables."

15. Dean Legal is a domestic corporation doing business in the State of Nevada.

16. Dean Legal regularly collects or attempts to collect consumer debts owed or due another, or asserted to be owed or due another, and therefore, Dean Legal is a "debt collector" under 15 U.S.C. § 1692a(6).

17. Dean Legal's principal purpose is to represent consumer debt buyers and debt collectors to collect defaulted consumer debts, and therefore, Dean Legal is a "debt collector" under 15 U.S.C. § 1692a(6).

18. In this matter, Southern Capital hired Dean Legal to collect Plaintiffs' consumer debts, including, without limitation, by filing the subject lawsuits against Plaintiffs.

19. Except as specifically noted herein, each defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment. The defendants are jointly and severally liable to Plaintiffs.

### FACTUAL ALLEGATIONS AS TO MACKLIN

20. Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth below.

21. On July 7, 2021, Dean Legal, on behalf of Southern Capital, filed a lawsuit against Plaintiff Macklin in Las Vegas Justice Court under Case No. 21C015060 (the "Macklin Lawsuit") for a purported personal vehicle loan originally belonging to Nevada West Financial (the "Creditor").

22. The Lawsuit sought alleged defaulted sums due and owing under a consumer vehicle loan debt that was primarily for family, personal, or household purposes, and which meets the definition of a "debt" under 15 U.S.C § 1692a(5) (the "Debt").

23. The Debt was purchased, assigned, or transferred to Southern Capital for collection after the Debt was allegedly in a default status (charged off) with the Creditor.

24. On July 17, 2021, process server Anthony Spada ("Spada") completed an Affidavit of Service under penalty of perjury claiming falsely that he served the Summons and Complaint on July 14, 2021 at 4:53 pm (the "Macklin Affidavit").

25. The Macklin Affidavit claims falsely that Spada served a "Jane Doe" who was a "Member of Household" described as a 60-year-old White woman who is 5'4' and 140 lbs.

26. Nobody by that description resides with Plaintiff Macklin nor has anyone with that description ever resided with Plaintiff Macklin.

27. Macklin was not served with the Summons and Complaint.

28. On July 26, 2021, Dean Legal filed the Macklin Affidavit in the Macklin Lawsuit.

29. Based on the false Macklin Affidavit, Southern Capital, by and through Dean Legal, obtained a Default against Plaintiff Macklin on September 24, 2021.

30. Based on the false Macklin Affidavit, Southern Capital, by and through Dean Legal, sought a Default Judgment on October 25, 2021, which the Justice Court granted on November 1, 2021.

31. Macklin was unaware of the Macklin Lawsuit until she received notice from her employer that her wages were being garnished.

32. Macklin filed a Motion to Set Aside Default Judgment on January 7, 2022, to which Southern Capital and Dean Legal failed to respond, and the Court set aside the Default and Default Judgment on February 28, 2022.

## FACTUAL ALLEGATIONS AS TO REED

33. On July 8, 2021, Dean Legal, on behalf of Southern Capital, filed a lawsuit against Reed in Las Vegas Justice Court under Case No. 21C015089 (the "Reed Lawsuit") for a purported personal vehicle loan originally belonging to Nevada West Financial (the "Creditor").

34. The Lawsuit sought alleged defaulted sums due and owing under a consumer vehicle loan debt that was primarily for family, personal, or household purposes, and which meets the definition of a "debt" under 15 U.S.C § 1692a(5) (the "Debt").

35. The Debt was purchased, assigned, or transferred to Southern Capital for collection after the Debt was allegedly in a default status (charged off) with the Creditor.

36. On July 17, 2021, Spada completed an Affidavit of Service under penalty of perjury claiming falsely that he served Plaintiff Reed (the "Reed Affidavit").

37. On July 26, 2021, Dean Legal filed the Reed Affidavit in the Reed Lawsuit.

38. The Reed Affidavit claims falsely that Reed was served personally on July 13, 2021 at 5:02 pm, when this is false.

39. The Reed Affidavit claims to have served Reed personally and that Reed resided at 8109 Bandoleer Court, Las Vegas, NV 89031 when served.

40. However, Reed had not resided at that address since February 2021.

41. Reed was not served with the Summons and Complaint.

42. Based on the false Reed Affidavit, Southern Capital, by and through Dean Legal, obtained a Default against Plaintiff Reed on September 24, 2021.

43. Based on the false Reed Affidavit, Southern Capital, by and through Dean Legal, sought a Default Judgment on October 25, 2021, which the Justice Court granted on November 1, 2021.

44. Reed was unaware of the Reed Lawsuit until he received notice from his employer that his wages were being garnished.

45. Reed filed a Motion to Set Aside Default Judgment on February 7, 2022, to which Southern Capital and Dean Legal failed to respond, and the Court set aside the Default and Default Judgment on March 15, 2022.

## ADDITIONAL FACTUAL ALLEGATIONS AS TO DEFENDANT SOUTHERN CAPITAL

46. Southern Capital knew, or should have known, that Spada's successful service rate, personal service rate, and substitute service rate were unrealistic and not close to the normal rates for the industry in Las Vegas.

47. Southern Capital ignored these red flags that demonstrated that Spada was providing false affidavits about his services of process and continued to hire Spada (through his employer, Bullet Legal Services ("Bullet")) to serve Southern Capital's debt collection lawsuits.

48. Southern Capital's exclusive use of Bullet incentivized both Bullet and Spada to fraudulently report unrealistic rates of personal service and to manufacture service attempts to please Dean Legal and Southern Capital.

49. Dean Legal and Southern Capital were in turn benefited in this enterprise through quicker defaults and default judgments, cheaper skip-tracing, avoiding expensive service attempts at multiple addresses and the expedience of defendants having no notice and not appearing in court to contest the cases.

50. At all times, Southern Capital through its agent Dean Legal, filed with the court Spada's proofs of service under Dean Legal's firm heading, a public affirmation that Southern Capital endorsed Spada as a vetted and honest process server and endorsed the honesty and accuracy of the proofs of service being filed.

51. In truth, Southern Capital through Dean Legal had at all times data available to it proving that Spada was a serial perjurer, and Southern Capital either failed to review the data and/or willfully ignored it.

52. At all times, Southern Capital had policies and procedures requiring it and Dean Legal to audit both Spada's individual service attempts and batches of Spada's service attempts to detect potential inaccuracies and untruths to root out perjury. In violation of its own policies and procedures, Southern Capital failed to audit Spada's service attempts and/or willfully ignored the data.

53. At all times, Southern Capital had policies and procedures requiring Dean Legal, Bullet, and Spada to report the demographic data of the persons served and include that information on all proofs of service.

54. Defendants knew or should have known that Spada was not abiding by Southern Capital's policies and procedures.

55. It was strong evidence that Spada was not personally serving the persons as claimed because Spada could not provide their demographic data.

56. Regardless, Southern Capital, filed, through its agent Dean Legal, Spada's falsified proofs of service.

57. Upon information and belief, Southern Capital, through its agent Dean Legal, paid Spada only for completed service and not for each service attempt, thereby incentivizing Spada to fraudulently report personal service, an invalid address on the first attempt each time, or false affidavits of due diligence leading to defaults debtor defendants like Plaintiffs.

58. On information and belief, at all times, Southern Capital controlled the times of day during which Spada could attempt service of process upon debtor defendants like Plaintiffs (e.g. only between 8 a.m. and 9 p.m.).

59. Southern Capital controlled the places where Spada could attempt service (e.g. residences) versus the places where Spada was prohibited by Southern Capital from attempting service (e.g. places of employment).

60. Southern Capital controlled whether Bullet had to make further attempts at an address that Spada reported as invalid, and Southern Capital controlled whether Bullet had to effectuate service at an address that Bullet had already reported as invalid, commonly referred to in the industry as a "serve regardless" instruction.

61. Southern Capital controlled what Spada could say to a debtor defendant when attempting service; that is, Southern Capital prohibited Spada from discussing the lawsuit with the debtor defendant or the debtor defendant's co-occupants.

62. Southern Capital controlled Spada to the extent that Southern Capital prohibited Bullet from disclosing to anyone that Spada was attempting to serve the debtor defendant in relation to the debt.

63. Southern Capital controlled Spada to the extent that Southern Capital required Spada's mobile device to report and prove GPS data consistent with the stated service address and time of each attempted service.

64. Southern Capital controlled Spada to the extent that Southern Capital required Spada to take photos of the service address and/or of the debtor defendant on each service attempt.

65. Southern Capital controlled Spada to the extent that Southern Capital required Spada to report the demographic data of the person served. Spada's proofs of service were at all times subject to the control of Southern Capital who had a right to inspect and review the proofs before filing with the court. Southern Capital controlled which process servers working for Spada could work on Southern Capital's debt collection lawsuits, and, at all relevant times, Southern Capital mandated exclusive use of Spada.

## **ADDITIONAL FACTUAL ALLEGATIONS AS TO DEFENDANT DEAN LEGAL**

66. Dean Legal knew that Spada's successful service rate, personal service rate, and substitute service rate were unrealistic and not close to the normal rates for the industry in Las Vegas.

67. Dean Legal ignored these obvious flags that demonstrated that Spada was lying about his services of process and continued to hire Spada, through Bullet, to serve Southern Capital's debt collection lawsuits.

68. Dean Legal's exclusive use of Bullet incentivized both Bullet and Spada to fraudulently report unrealistic rates of personal service to please Dean Legal and Southern Capital.

69. Dean Legal and Southern Capital were in turn benefited in this enterprise through quicker defaults and default judgments, cheaper skip-tracing, avoiding expensive service attempts at multiple addresses and the expedience of defendants having no notice and not appearing in court to contest the cases.

70. At all times, Dean Legal filed with the court Spada's proofs of service under Dean Legal's firm heading, a public affirmation that Dean Legal endorsed Spada as a vetted and honest process server and endorsed the honesty and accuracy of the proofs of service being filed.

71. In truth, Dean Legal had at all times data available to it proving that Spada was a serial perjurer, and Dean Legal either failed to review the data and/or willfully ignored it.

Law Office of Kevin L. Hernandez
8920 W. Tropicana Avenue, Suite 101
Las Vegas, Nevada 89147
(702) 563-4450  FAX: (702) 552-0408

72. At all times, Dean Legal had policies and procedures requiring it to audit both Spada's individual service attempts and batches of Spada's service attempts to detect potential inaccuracies and untruths to root out perjury. In violation of its own policies and procedures, Dean Legal failed to audit Spada's service attempts and/or willfully ignored the data.

73. At all times, Dean Legal had policies and procedures requiring Bullet and Spada to report the demographic data of the persons served and include that information on all proofs of service.

74. Regardless, Dean Legal, in violation of its own policies, filed Spada's proofs of service with the data missing.

75. On information and belief, Dean Legal paid Spada only for completed service and not for each service attempt, thereby incentivizing Spada to fraudulently report personal service, an invalid address on the first attempt each time, or false affidavits of due diligence leading to defaults debtor defendants like Plaintiffs.

76. On information and belief, at all times, Dean Legal controlled the times of day during which Spada could attempt service of process upon debtor defendants like Plaintiffs (e.g. only between 8 a.m. and 9 p.m.).

77. Dean Legal controlled the places where Spada could attempt service (e.g. residences) versus the places where Spada was prohibited by Dean Legal from attempting service (e.g. places of employment).

78. Dean Legal controlled whether Spada had to make further attempts at an address that Spada reported as invalid, and Dean Legal controlled whether Spada had to effectuate service at an address that Spada had already reported as invalid, commonly referred to in the industry as a "serve regardless" instruction. Dean Legal controlled what Spada could say to a debtor defendant when attempting service; that is, Deal Legal prohibited Spada from discussing the lawsuit with the debtor defendant or the debtor defendant's co-occupants.

79. Dean Legal controlled Spada to the extent that Dean Legal prohibited Spada from disclosing to anyone that Spada was attempting to serve the debtor defendant in relation to the debt. Dean Legal controlled Spada to the extent that Dean Legal required Spada's mobile device

to report and prove GPS data consistent with the stated service address and time of each attempted service.

80. Dean Legal controlled Spada to the extent that Dean Legal required Spada to take photos of the service address and/or of the debtor defendant on each service attempt.

81. Dean Legal controlled Spada to the extent that Dean Legal required Spada to report the demographic data of the person served. Spada's proofs of service were at all times subject to the control of Dean Legal who had a right to inspect and review the proofs before filing with the court.

82. Dean Legal controlled which process servers working for Spada could work on Dean Legal's debt collection lawsuits, and, at all relevant times, Dean Legal mandated exclusive use of Spada.

## DEFENDANTS VIOALTED SECTION 1692f(1)
## WHEN THEY COLLECTED DEFICIENCY BALANCES IN VIOLATION OF NRS 104

83. Moreover, these debts underlying the lawsuits filed by Southern Capital, were debts originally owed to Nevada West Financial, LLC, and Rightsize Funding, LLC (together with Nevada West Financial, LLC, referred herein to as the "Original Creditor").

84. In all of the lawsuits at issue, Defendants were attempting to collect the deficiency balance for vehicles that were repossessed.

85. However, pursuant to NRS 104, Defendants were not entitled to any deficiency balance since the required notices were not provided to the borrowers before the disposition of the vehicles.

86. NRS 104.9611 states, "Except as otherwise provided in subsection 4, a secured party that disposes of collateral under NRS 104.9610 shall send to the persons specified in subsection 3 a reasonable authenticated notification of disposition." NRS 104.9611(2).

87. Under NRS 104.9613(1), the notification of disposition must include, among other things, "the time and place of a public disposition or the time after which any other disposition is to be made."

88. Defendants, or the Original Creditors, failed to provide the "time and place of a public disposition" in its notifications.

89. Therefore, under Nevada law, Defendants were not entitled to any deficiency balance.

90. As such, Defendants were attempting to collect an amount that was not "permitted by law." 15 U.S.C. § 1692f(1).

## CLASS ALLEGATIONS

91. Plaintiffs bring this action on behalf of a Class of all persons similarly situated under Rules 23 of the Federal Rules of Civil Procedure.

92. Plaintiffs define the First Class as –
   a. All persons residing in Nevada;
   b. against whom Southern Capital, Dean Legal, filed a debt collection lawsuit;
   c. and against whom Southern Capital obtained a default and/or default judgment in the justice courts of Clark County, Nevada;
   d. and for which the only evidence that the person received service of process of Southern Capital's lawsuit was an affidavit signed by a representative of Bullet Legal;
   e. during the period beginning one year before the commencement of this action through the date of class certification.

93. Plaintiffs define the Second Class as –
   f. All persons residing in Nevada;
   g. who were alleged to owe debt to the Original Creditor for a repossessed vehicle that was subsequently subject to a public disposition;
   h. against whom Southern Capital and Dean Legal, filed a debt collection lawsuit for a deficiency balance;
   i. when the notification of disposition failed to provide the time and place of the public disposition;

j. during the period beginning one year before the commencement of this action through the date of class certification.

94. <u>Numerosity</u>: The Class is so numerous that joinder of all members is impractical. Upon information and belief, the Class contains more than 100 people.

95. <u>Commonality</u>: Class treatment will generate common answers apt to drive resolution of the litigation. The Class members have suffered the same legal injury; that is, Defendants, in violation of the FDCPA, filed against Plaintiffs false affidavits or proofs of personal service of process in Las Vegas debt collection lawsuits. The injury is capable of resolution on a class-wide basis by, for example, cross referencing those who did not file answers to Defendants' lawsuits, with those who have had no contact with Defendants since Defendants' lawsuits were filed, with those for whom skip-tracing data shows did not reside at the service address at the time of service, with those for whom Defendants did not record valid GPS service coordinates, with those for whom Defendants did not record service address photographs taken at the time of service, and with those who sign declarations attesting to not having been personally served with process.

96. <u>Typicality</u>: Plaintiffs' claims are reasonably co-extensive with those of the unnamed Class members. Plaintiffs were subjected to the same FDCPA violations as the unnamed Class members. Maintenance of a class action is economical, and Plaintiffs' claims are so interrelated that the interests of the Class members will be fairly and adequately protected in their absence.

97. <u>Adequacy of Representation</u>: Neither the Plaintiffs nor their counsel have conflicts of interest with other Class members. Plaintiffs, members of the Class with the same interest and injury as the Class, and their counsel will prosecute this action vigorously on behalf of the Class.

## **FIRST CLAIM FOR RELIEF**

**Violations of the FDCPA; 15 U.S.C. § 1692, *et seq.***

98. Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth below.

99. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations or means in connection with the collection of consumer debts when each drafted,

1 completed, filed, or caused to be filed, false affidavits of personal service with courts of law in the State of Nevada.

100. Defendants violated 15 U.S.C. § 1692e(5) by taking action that each could not legally undertake in connection with the collection of consumer debts when each drafted, completed, filed, or caused to be filed, false affidavits of personal service or false affidavits of due diligence with courts of law in the State of Nevada.

101. Defendants violated 15 U.S.C. § 1692e(10) by using false, deceptive, and misleading representations or means in connection with the collection of consumer debts when each drafted, completed, filed, or caused to be filed, false affidavits of personal service or false affidavits of due diligence with courts of law in the State of Nevada.

102. Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect and attempt to collect debts when each drafted, completed, filed, or caused to be filed, false affidavits of personal service or false affidavits of due diligence with courts of law in the State of Nevada.

103. Defendants violated 15 U.S.C. § 1692f(1) by collecting, or attempting to collect, unauthorized amounts (including interest, fees, charges, and expenses incidental to the principal obligation) by (a) using false affidavits of personal service or false affidavits of due diligence to defraud the justice courts in the State of Nevada to seek to obtain Defaults and Default Judgments by which Defendants obtained illegally garnished funds, or (b) attempting to collect a deficiency balance even though the underlying notification of disposition failed to comply with the requirements of NRS 104, as detailed herein.

104. Defendants' acts and omissions were willful, reckless, and/or negligent violations of the FDCPA, including every one of the above-cited provisions.

105. In the alternative, the Defendants were negligent in the above-referenced acts and omissions, entitling Plaintiffs to recover under 15 U.S.C. § 1692k(a)(1).

106. As a direct and proximate result of the above-referenced violations by Defendants, Plaintiffs are entitled to statutory damages plus actual damages to be proven at the time of trial in this matter.

107.    108. Plaintiffs have been forced to retain legal counsel to pursue these claims and are therefore entitled to recover reasonable attorney's fees and costs incurred under 15 U.S.C. § 1692k.

108.    109. Plaintiffs reserves the right to assert additional facts and damages not referenced in this Complaint, and/or to present evidence of the same at the time of trial.

109.    **WHEREFORE,** Plaintiff prays this Court:

1. Assume jurisdiction in this proceeding;
2. Certify this litigation as a class action, under Rule 23;
3. Declare that Defendants violated the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692e and 1692f;
4. Award Plaintiffs actual damages under 15 U.S.C. § 1692k(a)(1);
5. Award Plaintiffs statutory damages in an amount not to exceed $1,000.00 under 15 U.S.C. 1692k(a)(2)(A) and/or (B)(i);
6. Award the Class statutory damages in an amount not to exceed the lesser of five hundred thousand dollars ($500,000.00) or 1 percent of the net worth of each Defendant, under 15 U.S.C. 1692k(a)(2)(B)(ii);
7. Award Plaintiff and the Class the costs of this action together with reasonable attorney's fees under 15 U.S.C 1692k(a)(3); and

///
///
///

8. Award Plaintiff and the Class such other and further relief deemed proper and just.

**TRIAL BY JURY DEMANDED ON ALL COUNTS.**

Dated: July XX, 2022

**LAW OFFICE OF KEVIN L. HERNANDEZ**

*/s/ Kevin L. Hernandez*
Kevin L. Hernandez, Esq.
Nevada Bar No. 12594
8920 W. Tropicana Avenue, Suite 101
Las Vegas, Nevada 89147
T: (702) 563-4450
F: (702) 552-0408
kevin@kevinhernandezlaw.com
*Attorney for Plaintiffs*

**KIND LAW**

/s/ Michael Kind
Michael Kind, Esq.
Nevada Bar No. 13903
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
(702) 337-2322
(702) 329-5881 (fax)
mk@kindlaw.com
*Attorney for Plaintiffs*